UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| KRISTIE RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-00169-SEB-DML |
| | ) | |
| CITY OF SCOTTSBURG, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Dkt. 33]. Plaintiff Kristie Richardson has brought this action against her former employer, the City of Scottsburg, Indiana ("the City"), alleging that, after her position with the City was eliminated due to budget constraints, the City failed to hire her based on her age and disability for an open position for which she had applied, in violation of the Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA"), respectively.[1] For the reasons detailed below, we <u>GRANT</u> Defendant's Motion for Summary Judgment.

---

[1] In her response in opposition to the City's summary judgment motion, Ms. Richardson indicated that she is no longer pursuing her discrimination claim based on the elimination of her position or her worker's compensation retaliation claim. Accordingly, Defendant's Motion for Summary Judgment is <u>GRANTED</u> as to those claims.

## Factual Background

**General Background**

Ms. Richardson began working for the City in 2001 as secretary to the Mayor. In 2003 or 2004, she shifted to the position of Clerk in the City's Utility Office and again moved in 2007 to a position in the City's Citizens Communication Broadband Department. Except for an approximately one year period when she was not employed by the City, she remained in that position until January 3, 2017, when that job was eliminated due to budgetary constraints. It is undisputed that throughout her tenure Ms. Richardson was never subjected to discipline and that her job performance always met her employer's expectations. After her position was eliminated, she remained eligible for rehire.

**Failure to Hire**

A few weeks following the conclusion of Ms. Richardson's employment, a Utility Clerk position became available. The vacancy arose when Leslie Bixler, who had previously held the position, was promoted to Utility Office Manager. As the new supervisor, Ms. Bixler was responsible for hiring her replacement. Ms. Bixler, who had graduated from high school in 2013, worked for the City in the Utility Clerk position for approximately four years prior to her promotion.

On February 17, 2017, Jessica Jones, the Mayor's Administrative Assistant, sent an email to Ms. Richardson advising her that there was an opening for the Utility Clerk position, a job which Ms. Richardson had previously performed for a few years early in her tenure with the City. Jones Dep. at 7, 35–36. Ms. Jones also forwarded Ms.

Richardson's application to Ms. Bixler, though there were no discussions between them regarding Ms. Richardson's application. Jones at 36. At the time Ms. Richardson applied for the Utility Clerk position she was forty years old.

Ms. Bixler reportedly received "quite a few" resumes and applications for the Utility Clerk position, which she sorted into a "yes" group and a "no" group based on factors such as whether the application and resume looked professional and were easily readable. Bixler Dep. at 16. Ms. Bixler has stated that she believes that Ms. Richardson's application was in the initial "yes" group. *Id.* at 24.

Following this initial sorting, Ms. Bixler reviewed more closely the "yes" applications, particularly the applicants' education and previous job experience. Ms. Bixler was seeking an applicant with recent customer service and cash handling experience to fill the position. Ms. Bixler also reviewed in search of a candidate with a college degree, despite the fact that the job description for the Utility Clerk position did not list a college degree as a required or preferred qualification and she herself did not at that time have such a degree.[2] Ultimately, the applicant pool was narrowed to five applicants, four of whom were interviewed for the position.[3] Bixler Dep. at 16, 27, 28. Ms. Richardson was not among those five candidates chosen for an interview.

Ms. Bixler as the sole decisionmaker hired Alyssa Cole, who was approximately twenty-three years old at the time, without discussing the applications, interviews, or her

---

[2] Although the City gave the impression in its briefing that, at the time she made the hiring decision, Ms. Bixler had a degree in business management from Indiana University, she testified that she did not receive that degree until 2018.

[3] The fifth candidate declined an interview after securing a position elsewhere.

selection decision with anyone else during the hiring process. *Id.* at 32. Ms. Bixler testified that her decision was based in part on Ms. Cole's college degree, her recent cash handling experience, her friendly customer service demeanor, and the high recommendations of her previous supervisor. *Id.* at 19.

Ms. Bixler testified that, while she was confident that Ms. Richardson could have performed the essential duties of the Utility Clerk, she did not select her for an interview because other applicants were better qualified.[4] Ms. Richardson had a high school diploma but no other educational training beyond high school and did not hold any job-related certifications. Richardson Dep. at 84–85. Ms. Bixler also noted that Ms. Richardson's resume reflected that her prior experience working in the Utility Office occurred several years earlier (from 2001 to 2005) and she had no recent cash handling experience. Bixler Dep. at 42–43.

Whether Ms. Bixler knew the applicants' exact ages at the time she made the hiring decision is disputed by the parties, but she concedes that she believed Ms. Richardson to be in her mid to late-thirties at the time and Ms. Cole in her twenties.

**Plaintiff's Injury**

Ms. Richardson maintains that the failure to hire her for the Utility Clerk position was impermissibly influenced by a prior job-related injury she incurred in 2013 resulting in her disability. In 2013, Ms. Richardson fell and injured her ankle while working for the City. As a result of the injury, she required four surgeries between 2013 and 2016.

---

[4] Other than Ms. Cole, we have no information regarding the qualifications of the remaining three candidates who were interviewed.

Her medical bills relating to that injury were covered by worker's compensation insurance and she received her full salary and benefits while she was off work. When she returned to work following her injury, Ms. Richardson's job title, duties, and salary remained the same.

In 2016, Ms. Richardson required ankle fusion surgery, after which her ability to walk "long distance[s]" and to stand for "long period[s] of time" had been affected due to pain and swelling. Richardson Dep. at 35–36. Her threshold for walking and standing "just all depends," she says. *Id.* at 36. As she puts it, she "can just have excruciating pain at any time. So I never know. I can have a good day or I can have a really bad day. It can be—I can walk from here to that door and it can just—have excruciating pain." *Id.* She can sit "only for so long" and must elevate her ankle several times a day. She was "not sure of the time limits" relating to these activities. *Id.* at 22–23.

In an August 27, 2017 letter, Ms. Richardson's surgeon, Dr. Jonathan P. Smerek, M.D., determined that, given the condition of her ankle, she has a permanent partial impairment rating of "17% of the whole person." Exh. A to Richardson Decl. Based on that functional capacity evaluation, however, she has no upper body limitations, can occasionally lift weight if needed, and can "[m]ore than likely … stand for up to 4-6 hr per day for 30 min durations intermittently elevating her foot if needed." *Id.*

The parties dispute the extent to which Ms. Bixler, at the time of the hiring decision, was aware of Ms. Richardson's ankle injury and her current physical limitations. Ms. Bixler concedes that she had knowledge that Ms. Richardson had suffered an ankle injury while working for the City, had had to undergo surgeries on her

ankle, and wore a boot when she came to work, but stated that she was unaware of any specifics regarding the seriousness of the injury or its continuing effects. Ms. Richardson believed Ms. Bixler was aware of her physical condition from having been present in the room and even participating in conversations on several occasions when Ms. Richardson's injury and medical follow-ups were discussed. Richardson Decl. ¶¶ 7–8.

**The Instant Litigation**

Ms. Richardson filed her complaint on September 13, 2018, alleging, *inter alia*, that she was discriminated against because of her age and disability, in violation of the ADEA and ADA, respectively, when she was not hired for the Utility Clerk position. The City filed its motion for summary judgment on August 26, 2019, which is fully briefed and ripe for ruling.

<u>**Legal Analysis**</u>

## I. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II. Discussion

Ms. Richardson claims that she was not hired for the position of Utility Clerk because of her disability, in violation of the ADA, and her age, in violation of the ADEA. Our analysis of these claims invokes the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), which requires that regardless of whether the court uses the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or some other framework to evaluate a plaintiff's employment discrimination claims, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *Ortiz*, 834 F.3d at 765). Under this "simplified" approach, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765. Here, Ms. Richardson has relied on both the *McDonnell Douglas* framework and an analysis of the evidence as a whole to support her disability and age discrimination claims.

### A. ADA Claim

Ms. Richardson's first claim is that she was not hired for the Utility Clerk position because of her disability. To prevail on a failure-to-hire claim under the ADA, a plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without

reasonable accommodation; and (3) the employer failed to hire her for the position under circumstances which give rise to an inference that the failure to hire was based on her disability. *Winsley v. Cook Cty.*, 563 F.3d 598, 603 (7th Cir. 2009). For the reasons detailed below, we find that Ms. Richardson has failed to establish that she is disabled within the meaning of the ADA. Thus, her disability claim cannot survive summary judgment.

The ADA defines a disability as "(a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 195 (7th Cir. 2011) (citing 42 U.S.C. § 12102(2)). Ms. Richardson has put forth arguments only under the first of these three definitions. We therefore follow her lead and limit our discussion accordingly. "Notably, the ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive." *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 880 (N.D. Ill. 2014) (citing ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (eff. Jan. 1, 2009)). "Following the 2008 amendments to the ADA, the term 'substantially limits' is to be construed broadly in favor of expansive coverage." *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(i)). "[A]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Here, Ms. Richardson contends that her disability relates to her fused ankle which substantially limits her in the major life activities of walking, standing, sitting, and lifting. In her deposition, she testified that she elevates her ankle several times each day and is unable to walk "long distance" or stand "for a long period of time" and that she can sit for "only so long." Richardson Dep. at 23, 35–36. However, when asked, she was unable to provide any further detail as to the meaning of these general terms, stating that she was "unsure of the time limits" for these activities and that it "just all depends." *Id.* at 36. At the time of her deposition, Ms. Richardson was also unable to recall what limitations her doctor had placed on her. Following her deposition, she produced an August 27, 2017 letter from her surgeon, Dr. Smerek, which stated that, based her functional capacity evaluation, "there would be no limitations in her upper body performance," "she could occasionally lift weight if needed," and "[m]ore than likely, she could stand for up to 4-6 hr per day for 30 min durations intermittently elevating her foot if needed." Exh. A. to Richardson Decl. There is no evidence that Dr. Smerek imposed any of these limitations as permanent restrictions; rather, based on Ms. Richardson's functional capacity examination, he views these as her minimum deficiencies. Dr. Smerek's letter does not reference any limitations on her sitting or walking.

"To be disabled with regard to the major life activity of walking, the employee must be 'substantially limited' in her ability to walk, and the limitation must be permanent or long term, and considerable compared to the walking most people do in their daily lives." *Blazek v. ADT Security LLC*, No. 19 C 1822, 2019 WL 2297317, at *5 (N.D. Ill. May 30, 2019) (quoting *E.E.O.C. v. Sears Roebuck & Co.*, 417 F.3d 789, 802

(7th Cir. 2005)).  The August 2017 opinion letter from Dr. Smerek does not include any limitation(s) on walking.  Ms. Richardson's testimony that she is unable to walk "long distance" does not establish a substantial limitation of that major life activity compared to most people in the general population.  Her similarly vague estimates of the length of time she is able to remain seated as well as the single, conclusory comment in her doctor's letter that she can "occasionally lift weight when needed" fall well short of establishing disability with regard to her major life activities of sitting and lifting.

Ms. Richardson also was unable to provide necessary details as to the maximum amount of time she is able to stand.  Her doctor opined that she was able to remain standing for thirty-minute periods up to four to six hours a day.  The Seventh Circuit previously has held that "thirty to forty minutes [of standing] is not a 'very brief' period, [and] we find that [plaintiff's] inability to stand for longer periods does not constitute a substantial limitation on the major life activity of standing."  *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 312 (7th Cir. 2007); *accord Dangelo v. Rogers Enterprises, Inc.*, No. 2:09-cv-383, 2011 WL 1672119, at *6 (N.D. Ind. May 4, 2011) (holding that the plaintiff's "inability to stand for more than ½ hour does not rise to the level of a substantial limitation on the major life activity of standing").  Even assuming that Ms. Richardson is unable to stand for more than thirty minutes at a stretch, her inability to stand for longer periods does not constitute a substantial limitation on the major life activity of standing.  Accordingly, Ms. Richardson has failed to establish that she is disabled within the meaning of the ADA and ADAAA.

Even if Ms. Richardson had succeeded in making such a showing, there is insufficient evidence in the record before us to support the conclusion that Ms. Bixler was aware of her disability and that she discriminated against her on that basis. "Claims based on alleged discrimination because of disability generally require a showing that the defendant knew of the disability." *Watters v. Homeowners Ass'n at Preserve at Bridgewater*, No. 1:18-cv-00270-MPB-JMS, 2019 WL 6213165, at *13 (S.D. Ind. Nov. 21, 2019). There is no evidence that Ms. Richardson ever specifically or directly informed Ms. Bixler that she was disabled. At most, the evidence reveals that Ms. Bixler knew that Ms. Richardson had suffered an ankle injury while working for the City that required surgery to repair and that she wore a walking boot for some period of time following the surgery. Ms. Richardson rests her claims on the fact that Ms. Bixler had been present in the room and/or participated in conversations with others during which Ms. Richardson discussed her injury and her need to wear the walking boot. Beyond those conversations, there is no evidence that Ms. Bixler was aware of the severity and extent of Ms. Richardson's impairment such that a reasonable fact finder could conclude that she knew that Ms. Richardson was disabled. Lacking such knowledge, Ms. Bixler could not be found to have discriminated against Ms. Richardson on the basis of her disability. For these reasons, Ms. Richardson's ADA claim fails and must be dismissed.[5]

---

[5] Even if Ms. Richardson could prove she was disabled and that Ms. Bixler was aware of that disability, her ADA claim would fail for the same reasons discussed below with reference to her ADEA claim.

### B.    ADEA Claim

Ms. Richardson's second theory of liability against the City is based on its failure to interview and hire her for the position of Utility Clerk due to her age.  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual … because of such individual's age."  29 U.S.C. § 623(a)(1).  Ms. Richardson's age in February 2017 was forty years.[6]  She therefore qualifies for protection under the ADEA, which "protects workers 40 years of age and older from age-based discrimination."  *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018).  To prevail on a claim brought pursuant to the ADEA, Ms. Richardson must show that age was the "but-for" cause of the City's failure to hire her.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  That means that, under the ADEA, "it's not enough to show that age was *a* motivating factor.  The plaintiff must [be able to] prove that, but for his age, the adverse action would not have occurred."  *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009) (emphasis in original).

Ms. Richardson's arguments have been framed according to the *McDonnell Douglas* paradigm.  We therefore will first address her ADEA claim using that structure.  Thereafter, we will "assess cumulatively" all the evidence presented by Ms. Richardson to determine whether a reasonable factfinder could conclude on that basis that the City's

---

[6] The City contends that Ms. Bixler could not have discriminated against Ms. Richardson because of her age because Ms. Bixler did not know Ms. Richardson's age at the time of the hiring decision.  However, Ms. Bixler testified that she believed Ms. Richardson to be in her mid to late thirties and Ms. Cole to be in her twenties during the relevant time period.  Accordingly, even if Ms. Bixler did not know their precise ages, she knew that Ms. Cole was substantially younger than Ms. Richardson.

failure to hire her for the Utility Clerk position was based on her age. *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

### 1. *McDonnell Douglas* Framework

Under the *McDonnell Douglas* framework, a plaintiff establishes a *prima facie* case of discriminatory failure to hire under the ADEA by showing that: (1) she is a member of the protected group; (2) she applied for and was qualified for an open position; (3) despite her qualifications, she was rejected for the position; and (4) a substantially younger person who was similarly situated was hired for the position. *See Sembos v. Phillips Components*, 376 F.3d 696, 700 (7th Cir. 2004). There is no dispute in this case that the first three prongs have been satisfied; accordingly, we move to consider the fourth prong.

The City contends that Ms. Richardson lacks evidence to show that she was similarly situated to Ms. Cole because the two candidates for the position did not share materially similar qualifications. Specifically, the City notes that Ms. Cole had a college degree and recent cash handling experience while Ms. Richardson did not. *See Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003) (in determining whether employees are similarly situated, courts can consider whether the employees "had comparable experience, education, and other qualifications—provided the employer considered these … factors in making the personnel decision"). This contention is intertwined with the issue of whether the City's proffered nondiscriminatory reason for failing to interview and hire Ms. Richardson, to wit, that she was less qualified than Ms.

Cole, is pretextual. We combine these issues in analyzing the fourth prong of the required *prima facie* showing together with pretext.

Pretext is "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). Thus, as long as the City "honestly believed" the reasons given for failing to interview and hire Ms. Richardson, she cannot succeed in showing pretext, even if those reasons "were 'mistaken, ill considered, or foolish….'" *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)). A plaintiff may establish pretext by showing either that "a discriminatory reason more likely motivated" the employer's decision or that the employer's explanations for the decision are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (quotation marks and citation omitted). "To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision." *Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 920 (S.D. Ind. 2016) (citing *id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)).

Ms. Richardson asserts that her age, rather than any deficiency in her qualifications, was the real reason she was denied an interview and not hired for the Utility Clerk position. She contends that the undisputed evidence establishes that the City's purported nondiscriminatory reason for her failure to be interviewed or hired for the job, to wit, her lack of a college education and recent cash handling experience, is a

pretext for discrimination based on one or more of the following three factors: that the explanation given by Ms. Bixler for her preference for a candidate with a college degree is not credible, that Ms. Bixler deviated from the City's normal hiring practices in failing to interview her, and that Ms. Bixler failed to properly and fairly credit Ms. Richardson's fifteen years' prior experience with the City.

### a. Preference for an Applicant with a College Degree

We address Ms. Richardson's first contention that Ms. Bixler's explanation for favoring a college education is not credible. In support of this argument, Ms. Richardson notes that the Utility Clerk job description did not include a college degree as a required or preferred qualification. However, the Seventh Circuit has in other cases recognized that the fact that a job posting does not list all the skills that an employer ends up considering during the hiring process "just shows that [the defendant] hired a person with more skills than those sought in the advertisement." *Currie v. Paper Converting Mach. Co.*, 202 Fed. App'x 120, 122 (7th Cir. 2006). In such circumstances, "absent some evidence or argument that the applicant's [additional qualifications] were not desirable attributes, [the plaintiff's] argument goes nowhere." *Tai v. Shinseki*, 325 Fed. App'x 444, 447 (7th Cir. 2009). Thus, while a college education may not have been a requirement for the Utility Clerk position, we can hardly say that it was an undesirable attribute.

Ms. Richardson maintains that Ms. Bixler's purported preference for an applicant with a college education strains credulity because none of the four utility clerks then working for the City had college degrees; even Ms. Bixler herself, the direct supervisor of the new hire, did not have a college degree at the time she made the hiring decision. It is

15

true that evidence that an employer's proffered reasoning "has been applied inconsistently to other employees" can demonstrate pretext. *Perfetti v. First Nat'l Bank*, 950 F.2d 449, 451 (7th Cir. 1991). Here, however, Ms. Bixler has not been shown to have been responsible for prior hiring decisions in the Utility Office. The fact that a previous supervisor may not have viewed a college education with the same priority as Ms. Bixler did is not sufficient to undermine Ms. Bixler's veracity. Nor does the fact that Ms. Bixler herself did not have a college degree when she made the hiring decision evidence pretext, given that the evidence reflects that she was at the time pursuing a bachelor's degree in business management, and completed that program the following year.[7] Ms. Bixler's pursuit of a degree for herself tends to support her contention that she did in fact view a college education as a valuable attribute.

Ms. Richardson further claims that Ms. Bixler's explanation for her preference for a candidate with a college degree was "nonsensical" and thus not worthy of credence. Pl.'s Resp. at 13. When asked at her deposition why she believed a college degree was important for the Utility Clerk position, Ms. Bixler stated, "I would say that it shows work ethic, and there are a lot of things that you do learn in college that do pertain to— that you can relate to the job[] … [like] [t]he importance of policies and procedures." Bixler Dep. at 29. Ms. Bixler also testified that she believed that college coursework helped build critical thinking skills that were important to the Utility Clerk position, such

---

[7] Ms. Richardson also argues that Ms. Bixler subsequently hired someone for a position in the Utility Office who did not have a college degree. However, Ms. Bixler testified that she was not responsible for that hiring decision given that it was filled internally.

as "general problem-solving abilities, how to handle situations that are out of the norm." *Id.* at 43, 45–46.

Ms. Bixler's failure to identify any particular courses or areas of study that were relevant to the Utility Clerk's responsibilities and to explain the specific reasons college, as opposed merely to prior work experience, places a candidate in a better position to be able to follow policies and procedures and face unexpected situations do not constitute evidence of pretext. Mere disagreement with an employer's reasoning does not establish dishonesty. It is well-established under Seventh Circuit precedents that "so long as the employer does not base its decision on criteria that are unlawful, we 'must respect the employer's unfettered discretion to choose among qualified candidates.' … A court's role is to prevent unlawful hiring practices, not to second-guess employers' business decisions." *Bernales v. Cty. of Cook*, 37 Fed. App'x 792, 795 (7th Cir. 2002) (internal citation omitted). We do not address, never mind opine on whether Ms. Bixler made the best choice or the wrong choice or an unwise choice in favoring a college education credential over mere work experience.

### b.     Failure to Follow Hiring Policies

Ms. Richardson contends that the City failed to follow its own hiring policies which failure proves the decisions and reasons it made were pretextual. The City's policies in effect at the time of the hiring decision provided that "[o]pen and new job opportunities, insofar as practicable, shall be afforded employees in line with seniority principles subject to ability and job qualifications to be reasonably determined by management." Exh. 3 to Bixler Dep. Ms. Richardson claims that Ms. Bixler's failure to

even interview her violated this policy because she had more seniority than Ms. Cole, who had never previously worked for the City. However, Ms. Richardson concedes that she herself was not in fact an employee of the City when the hiring decision was made because her position had been eliminated approximately one and half months earlier. Nonetheless, she argues that she should have been treated as a current employee under the policy because "she was in all relevant respects identical to one." Pl.'s Resp. at 16. Ms. Richardson claims that Ms. Bixler's failure to do so is clear evidence of pretext.

"Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of discriminatory intent." *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012). Here, however, by her own admission, Ms. Richardson was not a City employee at the time the hiring decision was made; therefore, the City's hiring policy did not directly apply to her. Even if we were to find that in every practical sense she was an employee and therefore should have been treated as such, the cited policy does not *require* that current employees be interviewed and hired for open positions. Instead, it clearly states that hiring decisions "were subject to ability and job qualifications to be reasonably determined by management." Exh. 3 to Bixler Dep. For these reasons, Ms. Bixler's failure to apply this policy to Ms. Richardson cannot be deemed a significant deviation from the City's hiring practices sufficient to serve as evidence of pretext.

### c.     Relative Qualifications

Ms. Richardson contends that Ms. Bixler's failure to properly consider her fifteen years' experience working for the City also demonstrates pretext. Where, as here, "an

employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook*, 280 F.3d at 1180 (quotation marks and citation omitted). In other words, "pretext can be established only if the disparity between the plaintiff and the person hired is so great that no reasonable person could disagree that the plaintiff was better qualified." *Gullett v. Town of Normal, Ill.*, 156 Fed. App'x 837, 840 (7th Cir. 2005).

Ms. Bixler concluded in this instance that Ms. Cole was better qualified for the Utility Clerk position than Ms. Richardson, given her college education and recent cash handling experience. "Employers are entitled to rely on subjective criteria when deciding who is more qualified for a job." *Id.* Ms. Richardson has offered nothing to counter the City's assertion that Ms. Cole possessed both of those preferred qualifications. Ms. Richardson also concedes that she herself does not have a college degree or any recent cash handling experience. The evidence establishes that Ms. Richardson had, indeed, been a City employee for fifteen years and that during a few of those years at the beginning of her tenure she had successfully performed the Utility Clerk position. Even so, such experience does not render her "unquestionably better qualified" than Ms. Cole so as to raise an inference of pretext based solely on a disparity in qualifications.

Because Ms. Richardson has failed to show that "no reasonable person could disagree" that she was more qualified for the Utility Clerk position and has failed for the

reasons detailed above to demonstrate that Ms. Bixler did not honestly believe that Ms. Cole was more qualified for the position, she cannot prove her ADEA claim using the *McDonnell Douglas* framework.

### 2. Cumulative Evidence Under *Ortiz*

Apart from the evidence outlined above, Ms. Richardson presents no other evidence to establish that her failure to be interviewed or hired for the Utility Clerk position was due to her age. Thus, viewing the evidence as a whole in the cumulative fashion we are required to apply, the result is the same.

We repeat: Ms. Richardson does not dispute that, unlike Ms. Cole, she did not have a college degree or recent cash handling experience, two of the qualifications Ms. Bixler preferred in filling the position. While a college degree was not a requirement for the Utility Clerk position, no argument has been advanced—nor should it be—that such a qualification is in fact a negative attribute such that the City's favoring it would be suspect. The City is entitled to hire a person it believes is the most qualified for a job, even if the job could be performed satisfactorily by someone with different qualifications so long as the selection is not based on a prohibited characteristic such as age.

There is no such evidence that Ms. Richardson's age mattered here in any way in terms of this hiring decision. While no other Utility Clerks apparently had college degrees, Ms. Bixler was not responsible for those hiring decisions; therefore, any deviation from prior practice does not raise an inference of discrimination by Ms. Bixler. Nor does Ms. Bixler's failure to adhere to the City's hiring policy which establishes a preference for hiring from within the City workforce based on seniority provide an

inference of discrimination, given that Ms. Richardson concedes that she was no longer a City employee at the time the hiring decision was made. The fact that Ms. Richardson had significant prior experience working for the City, even when considered cumulatively with the other evidence in the record, is simply not enough to establish discrimination.

Because Ms. Richardson has failed to present sufficient evidence that establishes pretext under the *McDonnell Douglas* framework or that, when viewed as a whole, raises an inference that her failure to be hired for the Utility Clerk position was the result of age discrimination, her ADEA claim cannot survive summary judgment.

## III. Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment is GRANTED. Final judgment shall be entered accordingly.

IT IS SO ORDERED.


Date: ____3/2/2020____                    _____
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distribution:

Samuel Mark Adams
JOHN H. HASKIN & ASSOCIATES, LLC
sadams@jhaskinlaw.com

Aimee Rivera Cole
TRAVELERS STAFF COUNSEL OFFICE (Indianapolis)
arcole@travelers.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Julie Joy Havenith
TRAVELERS STAFF COUNSEL OFFICE
jhavenit@travelers.com

Shannon L. Melton
JOHN H. HASKIN & ASSOCIATES, LLC
smelton@jhaskinlaw.com